```
        IN THE UNITED STATES DISTRICT COURT
       FOR THE SOUTHERN DISTRICT OF ALABAMA
                  NORTHERN DIVISION
```

| | |
|---|---|
| **CURTIS BLACK,** | * |
| | * |
|     Plaintiff, | * |
| | * |
| vs. | *   CIVIL ACTION NO. 19-000041-B |
| | * |
| **ANDREW M. SAUL,**[1] | * |
| **Commissioner of Social Security,** | * |
| | * |
|     Defendant. | * |
| | * |

## ORDER

Plaintiff Curtis Black (hereinafter "Plaintiff"), seeks judicial review of a final decision of the Commissioner of Social Security denying his claim for a period of disability, disability insurance benefits, and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401, *et seq.*, and 1381, *et seq.* On May 22, 2020, the parties consented to have the undersigned conduct any and all proceedings in this case. (Doc. 20). Thus, the action was referred to the undersigned to conduct all proceedings and order the entry of judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil

---

[1] Andrew M. Saul became the Commissioner of Social Security on June 5, 2019. Commissioner Saul is hereby substituted for the former Acting Commissioner, Nancy A. Berryhill, as the named defendant in this action. *See* 42 U.S.C. § 405(g); Fed. R. Civ. P. 25(d).

Procedure 73.  Upon careful consideration of the administrative record and the memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner be **REVERSED AND REMANDED**.

I. **Procedural History**

Plaintiff protectively filed his application for benefits on March 29, 2016, alleging disability beginning March 21, 2016, based on high blood pressure and "heart problems." (Doc. 11 at 148, 185). Plaintiff's application was denied and upon timely request, he was granted an administrative hearing before Administrative Law Judge Ruth Ramsey on October 6, 2017. (Id. at 31). Plaintiff attended the hearing with his counsel and provided testimony related to his claims. (Id. at 35). A vocational expert ("VE") also appeared at the hearing and provided testimony. (Id. at 48). On March 20, 2018, the ALJ issued an unfavorable decision finding that Plaintiff is not disabled. (Id. at 18). The Appeals Council denied Plaintiff's request for review on December 12, 2018. (Id. at 4). Therefore, the ALJ's decision dated March 20, 2018, became the final decision of the Commissioner.

Having exhausted his administrative remedies, Plaintiff timely filed the present civil action. (Doc. 1). The parties waived oral argument (Doc. 21), and agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

II. **Issues on Appeal**

1. Whether the ALJ erred in failing to fully develop the record by failing to order a consultative cardiac examination?

2. Whether the ALJ erred in rejecting the opinions of Plaintiff's treating physician because they were not submitted prior to five days before the hearing?

3. Whether substantial evidence supports the RFC for a range of light work with the stated restrictions?

III. **Factual Background**

Plaintiff was born on November 19, 1970, and was forty-six years of age at the time of his administrative hearing on October 6, 2017. (Doc. 11 at 31, 172). Plaintiff graduated from high school and has a commercial driver's license. (Id. at 37, 49-50, 176, 238). He last worked as a delivery truck driver from 2015 to 2016 and as an asphalt truck driver in 2017. (Id.). He also worked as a construction worker from 2011-2015. (Id. at 50, 176). At the administrative hearing, Plaintiff testified that he stopped working because of problems with vertigo, dizziness, and blurred vision. (Id. at 44-46).

IV. **Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial

3

evidence and 2) whether the correct legal standards were applied.[2] <u>Martin v. Sullivan</u>, 894 F.2d 1520, 1529 (11th Cir. 1990). A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. <u>Sewell v. Bowen</u>, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. <u>Brown v. Sullivan</u>, 921 F.2d 1233, 1235 (11th Cir. 1991); <u>Bloodsworth v. Heckler</u>, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla, but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion."). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. <u>Chester v. Bowen</u>, 792 F. 2d 129, 131 (11th Cir. 1986); <u>Short v. Apfel</u>, 1999 U.S. Dist. LEXIS 10163, *4 (S.D. Ala. June 14, 1999).

**V.   Statutory And Regulatory Framework**

An individual who applies for Social Security disability benefits must prove his or her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to engage in any

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. <u>Walker v. Bowen</u>, 826 F.2d 996, 999 (11th Cir. 1987).

substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A); see also 20 C.F.R. §§ 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven his disability. 20 C.F.R. §§ 404.1520, 416.920.

The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. Id. Once a claimant meets this burden, it becomes the Commissioner's

5

burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834, 836 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

**VI. Discussion**

### A. The ALJ erred in failing to fully develop the record by ordering a consultative cardiac examination.

Plaintiff argues that the ALJ erred in failing to fulfill his duty to develop the record by failing to order a consultative cardiac examination. (Doc. 15 at 5). The record shows that Plaintiff requested a consultative cardiac examination, and the request was denied. (Doc. 11 at 18-19). The Commissioner counters that the medical evidence in the record was sufficient for the ALJ to make an informed decision regarding the RFC; thus, a consultative cardiac examination was neither necessary nor required. (Doc. 17 at 3). Having reviewed the record at length,

6

the Court finds that the ALJ erred in failing to order a consultative cardiac examination.

It is well established that a hearing before an ALJ in social security cases is inquisitorial and not adversarial. A claimant bears the burden of proving disability and of producing evidence in support of his claim, while the ALJ has "a basic duty to develop a full and fair record." Ellison v. Barnhart, 355 F.3d 1272, 1276 (11th Cir. 2003); see also Ingram v. Commissioner of Soc. Sec. Admin., 496 F.3d 1253, 1269 (11th Cir. 2007).

In fulfilling his or her duty to conduct a full and fair inquiry, the ALJ has the discretion to order a consultative examination where the record establishes that such is necessary to enable the ALJ to render a decision. Holladay v. Bowen, 848 F.2d 1206, 1210 (11th Cir. 1988). The ALJ is not required to order a consultative examination where the record contains sufficient evidence to permit the ALJ's RFC determination. Ingram, 496 F.3d at 1269 ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."); Good v. Astrue, 240 Fed. Appx. 399, 404 (11th Cir. 2007) (unpublished) ("the ALJ need not order an additional consultative examination where the record was sufficient for a decision.").

Having reviewed the record in this case, the Court finds that a consultative cardiac examination was necessary in order for the ALJ to make an informed decision regarding the severity of Plaintiff's diagnosed heart condition.

In her decision denying Plaintiff's request for a consultative examination, the ALJ stated:

> The undersigned did consider a post-hearing request from the claimant's representative for a cardiac consultative examination due to records from March and April 2016 mentioning a congestive heart failure diagnosis and a finding of lower extremity edema. The request is denied. The undersigned notes more recent objective cardiac notations, at Exhibit 9F, indicating a regular rate and rhythm with *normal* enzymes. Thus, sufficient evidence is in the file to evaluate the severity of the claimant's heart condition.

(Doc. 11 at 18-19)(emphasis added).

As Plaintiff points out, the record confirms that the "more recent objective cardiac notations, at Exhibit 9F," cited by the ALJ, actually show *critically high* enzymes in tests conducted at the hospital in January and July 2017, and a recommendation from the emergency room physician that Plaintiff follow up with a cardiologist. (Doc. 11 at 396-412). Specifically, the record shows that, in January 2017, Plaintiff presented to the emergency room with complaints of intermittent chest pain for one month and vertigo. (Id. at 408-09). A cardiac examination at that time revealed normal rate and rhythm and no murmurs, rubs, or gallops;

8

however, tests showed *critically high* enzymes. (Id. at 410-12). Then, on July 5, 2017, Plaintiff returned to the emergency room with complaints of chest pain, and initial tests conducted at that time showed "equivocal" cardiac enzymes, prompting additional testing. (Id. at 394-96). The additional tests revealed *critically high* enzymes. (Id. at 398-400). Then, on July 12, 2017, Plaintiff returned to the emergency room, again complaining of chest pain. (Id. at 395). His physical examination on that date revealed regular rate and rhythm and no murmurs, gallops or rubs. It appears there was no enzyme testing on that date. (Id.). In addition to the foregoing evidence, Plaintiff points to evidence that his blood pressure has remained elevated throughout 2016 and 2017; that he has been diagnosed with and treated for congestive heart failure and hypertension; and that he has been instructed to see a cardiologist but cannot afford to do so. (Doc. 15 at 5-6).

Of particular concern for the Court is the ALJ's statement that she was denying Plaintiff's request for a consultative examination because the "more recent objective cardiac notations, at Exhibit 9F, indicat[e] a regular rate and rhythm with *normal* enzymes. Thus, sufficient evidence is in the file to evaluate the severity of the claimant's heart condition." (Doc. 11 at 18-19)(emphasis added). This is incorrect. As discussed, the more recent records located at Exhibit 9F clearly show *critically high* enzymes, not normal enzymes. (Id. at 398-400, 410-12). Because

9

a substantial basis for the ALJ's denial of Plaintiff's request for a consultative examination is incorrect, the undersigned finds that the ALJ erred in failing to order a consultative cardiac examination.

Indeed, the Commissioner appears to have no response to this discrepancy in the ALJ's examination of the medical records. (Doc. 17 at 4). Rather, the Commissioner merely points to evidence showing that Plaintiff was diagnosed with congestive heart failure in 2016 (Doc. 11 at 251, 307); an echocardiogram from March 21, 2016, showed low normal left ventricular systolic function at 50-55% with grossly normal right ventricular size and systolic function, mild mitral regurgitation, and no pericardial effusion (id. at 252); Plaintiff presented to the emergency room on March 22, 2016, complaining of chest pain and shortness of breath, and his cardiac enzymes were negative, and other laboratory studies were normal (id. at 294); on March 22, 2016, Plaintiff's hypertension was under good control, and it was noted that his chest pain may even have a noncardiac etiology (id. at 295-97); at follow up on March 30, 2016, Plaintiff denied fatigue, weakness, chest pain, peripheral edema, or shortness of breath, and a cardiovascular exam was normal (id. at 303-04); Plaintiff did not seek treatment for chest pain again until January 2017, at which time his physical exam showed regular rate rhythm and no murmurs, rubs, or gallops, as well as normal S1 and S2 (id. at 409); in

July 2017, Plaintiff again complained of chest pain and dizziness and reported that he had been out of his Coreg and Ramipril[3] (id. at 394); and Plaintiff's physical exam on July 12, 2017, showed regular rate and rhythm with no murmurs, rubs, or gallops. (id. at 395).

The evidence cited by the Commissioner does not alter the facts that Plaintiff has been diagnosed with congestive heart failure, which the ALJ found to be a severe impairment,[4] and that the ALJ misstated the evidence used as the basis for her decision to deny Plaintiff's request for a consultative cardiac examination. Given Plaintiff's continued, and seemingly worsening, heart problems in 2017 and the objective evidence of *critically high* enzymes (which the ALJ incorrectly overlooked), the Court is satisfied that the ALJ erred in failing to obtain a consultative cardiac examination in order to determine the extent of any limitations caused by Plaintiff's diagnosed heart problems.

Accordingly, the Court finds that the ALJ erred in failing to

---

[3] According to Plaintiff, he is unable to afford his medications or to see a cardiologist. (Doc. 15 at 5).

[4] The ALJ found that Plaintiff's severe impairments include hypertension, congestive heart failure, vestibular system disorders, sleep-related breathing disorders, and asthma. (Doc. 11 at 21).

order a consultative cardiac examination.[5]

## VII. Conclusion

For the reasons set forth herein, and upon careful consideration of the administrative record and memoranda of the parties, it is hereby **ORDERED** that the decision of the Commissioner of Social Security denying Plaintiff's claim for a period of disability, disability insurance benefits, and supplemental security income be **REVERSED AND REMANDED** for further proceedings consistent with this opinion.[6]

**DONE** this **17th** day of **June, 2020.**

                              /s/ SONJA F. BIVINS
                    **UNITED STATES MAGISTRATE JUDGE**

---

[5] Having found that this case must be remanded for further proceedings, the Court need not address Plaintiff's remaining arguments for reversal.

[6] The Court expresses no opinion on whether Plaintiff's cardiac condition is disabling, only that the record is insufficient to make that determination, particularly given the ALJ's misinterpretation of the medical records on which she based her decision to deny the request for a consultative examination.

12